FERNANDO VELÁZQUEZ ET AL., Petitioners and Appellants, *v.* INSULAR BOARD OF ELECTIONS, Respondent, and ANTONIO GONZÁLEZ ET AL., Interveners and Appellees.

No. 4875.   Argued February 4, 1929.—Decided November 7, 1929.

*J. Valldejuli Rodríguez,* for the petitioners.   The *Attorney General, James R. Beverley,* and *Deputy Attorney General, Tomás Torres,* for the respondent.   *Bolívar Pagán,* for the interveners.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The District Court of San Juan refused to issue a writ of certiorari to the Insular Board of Elections.

It also set aside an order whereby the Governor had been directed not to issue certain certificates of election.

Appellants insist that the court below erred:

First.   In holding that the writ of certiorari authorized by section 89 of the Election Law will issue to review only the proceeding had before the Insular Board of Elections.

Second. In holding that the procedure authorized by section 89 is not a mode prescribed for the trial of an election contest in a broad sense.

Third. In holding that the court could reexamine only the four protested ballots marked with a double cross already passed upon by the Insular Board of Elections; also in refusing to review the action of the board as to these ballots for the reason that, as they could not change the result of the elections, such review would not serve any practical purpose.

Fourth. In holding that the court could not revise the action taken by representatives of the different political parties in the polling places.

Fifth. In holding that the courts of Porto Rico are without jurisdiction in either a civil or a criminal action to correct errors and frauds committed by polling place officials for the reason that these are immune.

Sixth. In setting aside of its own motion a previous order directing the Governor of Porto Rico not to issue certificates of election to the constitutional socialist candidates, pending a final determination of the action, without taking into consideration the fact that the judgment of the district court was not final.

The sixth and last contention is untenable for reasons indicated in *Towner* v. *District Court of San Juan,* 39 P.R.R. 457.

The argument in support of the fifth ground of appeal does not refer to any statement made by the trial judges that could be construed as holding that polling place officials are free from all responsibility, and that neither error nor fraud can be imputed to them in either a civil or a criminal action. The district judges did say that it was unnecessary to pass upon one contention of counsel for petitioners to the effect that to leave the fate of the general election in Porto Rico in the hands of the local canvassing boards would open a door to the commission of unconscionable fraud because the

said boards would then become the sole arbiters of election contests, inasmuch as they would be immune to investigation either civil or criminal. In this we find no error. The question before the court was as to the scope and extent of the statutory remedy by certiorari, not as to what might be the result of a failure on the part of the Legislature to provide an adequate substitute for the abolished law concerning election contests.

The third and fourth contentions, as well as the fifth in so far as not already disposed of, are mere variations of the first and second, and all are based primarily upon a *dictum* or upon *obiter dicta* in *People* v. *Oms*, 34 P.R.R. 435, 436, where this court said:

"When a fraud is committed anywhere on the Island the appropriate remedy is available to the person aggrieved. When committed outside of San Juan the aggrieved person has the additional remedy of bringing a certiorari suit in San Juan, where the Insular Board of Elections sits, where the superintendent has his office, and where presumably the ballots are preserved.

"The certiorari proceeding referred to, while from the use of the name may have some of the characteristics of a classical writ of certiorari, is not limited to an examination of the official returns. The protests, the affidavits filed before the board, and possibly some evidence *aliunde*, especially if discovered recently, might be revised in a certiorari proceeding. The idea of the Legislature was to supply a writ for the correction of election abuses, and, similarly to the Municipal Law and the Workmen's Compensation Law, the Legislature has given a remedy. To limit it to the official returns would render the writ in some cases completely nugatory."

In the *Oms* case the proceeding was by *quo warranto*. The gist of the decision, in so far as we are now concerned therewith, was that the remedy by *quo warranto* is not available unless invoked within fifteen days after publication of the result of a canvass by the Insular Board of Elections. What was there said about the availability and scope of the proceeding by certiorari as a cumulative or alternative remedy is explained and circumscribed in *Diez de Andino* v. *In-*

*sular Board of Elections,* 35 P.R.R. 92, 96, which was a proceeding by certiorari. In disposing of the question when thus directly presented for decision, this court said:

"We are inclined to agree with the appellee in the court below that by this writ of certiorari we can only review the things that were done before the board. In the case of *People* v. *Oms,* 34 P.R.R. 435, we intimated that perhaps in certain cases oral testimony might be given, but our notion is that such oral testimony could generally only clarify what had actually taken place before the board.

"We also agree with the appellee that the action of the board in refusing to open the ballots cast in certain precincts was a matter within the sound discretion of the board and in the absence of some indication of irregularity the discretion of said board in not opening the said ballots can not be reviewed. The mere request of the defeated candidate that all ballots should be examined was not sufficient."

From the opinion in *Roca* v. *The Insular Board of Elections,* 35 P.R.R. 587, 592, where section 89 of the Election Law is set forth and construed, we take the following extract:

"It must be conceded that there is no express provision of the law under which this case falls. It would have been very easy for the Legislature to say, if that had been its desire, in the third proviso or in another, that if the number of ballots declared void was sufficient to change the result of the election, the board should proceed to examine them anew and determine as to their validity. And it seems strange that it did not, taking into consideration that the Election Law describes every proceeding in detail and prescribes minutely the work to be performed by the bodies that it creates.

"By its wording the third proviso covers only cases of *contradiction shown by the entries, or between the number of voters as shown by the poll lists* and the number of ballots found in the ballot-box, or *between the latter number and the number of ballots distributed as shown by the summary of the tally sheets.*

"And in such cases of contradiction, if it could affect the result of an election, what does the law order the board to do? *To recount all the ballots of the polling place and modify its tally sheet according to the result of such recount.*

"What does 'recount' mean? Does it mean to reexamine? Does

it mean to open the packages which the law requires the poll board to make up and count the number of ballots contained in each?

"Considering the spirit of the law as a whole and how scrupulous the legislators were to fix each detail and each faculty, and in the absence of an express provision, we think that the latter construction is inevitable.

"In order that a ballot may be declared void or valid the unanimous consent of the representatives of the three political parties is required.

"In counting the ballots there might have been an error which may and should be corrected, but not by the Insular Board which has no power to substitute its judgment for the unanimous judgment of the lawful representatives of the only parties interested in the contest. There is only one case in which the board judges the validity of the ballot itself, that of a protested ballot, which is expressly provided by law."

Appellants also place some stress upon the further statement, contained in the same opinion, that—

"Where there is fraud, or when fundamental errors of law are committed, according to all precedents it is not the Insular Board, but the courts, which must decide the case."

It does not follow, however, that certiorari is the remedy. If the power of the Insular Board of Elections be limited to the matters indicated in the *Roca* case and if review by certiorari be restricted to a consideration of the matters properly before the board (as held in the *Diez de Andino* case), the conclusion is inevitable that the writ authorized by section 89 of the Election Law was not intended as a new method of trying all contested election cases coming within the purview of the law of 1906 (Compiled Statutes of 1911, pp. 897–903).

Costs were not awarded in the district court. Interveners appeal and assign this omission as error. It is true that the only real question involved (aside from the matter of costs) had been already decided by this court. Petitioners would have little reason to complain if they had been mulcted in costs. Nevertheless, courts occasionally do reverse them-

selves and should do so as often as they are shown to have been clearly in the wrong. We do not find anything in the brief for petitioners that either requires or would justify a modification of the views expressed in the *Roca* and *Diez de Andino* cases; but neither do we find in the refusal to award costs to interveners any such abuse of discretion as to justify a reversal.

Mr. Justice Texidor took no part in the decision of this case.